# United States Court of Appeals
## For the First Circuit

No. 08-2575

UNITED STATES OF AMERICA,

Appellee,

v.

NOEL DÁVILA-GONZÁLEZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. José Antonio Fusté, U.S. District Judge]

Before

Selya, Boudin and Howard, Circuit Judges.

Joseph C. Laws, Jr., Federal Public Defender, and Vivianne M. Marrero, Assistant Federal Public Defender, on brief for appellant.
Rosa Emilia Rodriguez-Vélez, United States Attorney, Nelson Pérez-Sosa, Chief, Appellate Division, and Thomas F. Klumper, Assistant United States Attorney, on brief for appellee.

February 10, 2010

**SELYA**, **Circuit Judge**.  On August 13, 2008, defendant-appellant Noel Dávila-González entered a straight plea of guilty to charges of (i) aiding and abetting the laundering of money derived from unlawful activities and (ii) conspiracy to commit money laundering.  See 18 U.S.C. §§ 2, 1956(a)(1)(B), 1956(h).  The district court sentenced him to serve a 78-month incarcerative term.  The appellant now challenges his sentence, citing a number of supposed procedural errors.  Discerning no merit in the appellant's claims, we affirm.

When a sentencing appeal follows a guilty plea, "we glean the relevant facts from the change-of-plea colloquy, the unchallenged portions of the presentence investigation report (PSI Report), and the record of the disposition hearing." United States v. Vargas, 560 F.3d 45, 47 (1st Cir. 2009).  In following this praxis, we rehearse only those facts that are needed to put the claims of error into context.

On October 15, 2004, the appellant called a known member of a drug cartel to arrange for the delivery of "two bundles." Unfortunately for the appellant, the person to whom he reached out doubled in brass as a confidential informant for the Federal Bureau of Investigation (FBI).  Over the course of several calls, most of which were recorded, the appellant and the informant agreed to meet and consummate the transaction.

This meeting took place at a Burger King restaurant in Puerto Rico on October 18, 2004. At that time the appellant effected delivery of the "two bundles" to the informant. Subsequent analysis revealed that the "two bundles" contained $204,440 in United States currency.

Rather than springing the trap then and there, the FBI continued its investigation for nearly three years. On May 3, 2007, a federal grand jury sitting in the District of Puerto Rico returned a six-count indictment against the appellant and others. The authorities arrested the appellant in Tampa, Florida, on May 9, 2008. Following his rendition to Puerto Rico, the appellant entered a plea of guilty to the three counts against him (one of which was dismissed at sentencing).

The district court convened the disposition hearing on November 13, 2008. The court deemed applicable a six-level sentencing enhancement after finding that "the defendant knew or believed that any of the laundered funds were the proceeds of, or were intended to promote . . . an offense involving the manufacture, importation, or distribution of a controlled substance or a listed chemical." USSG §2S1.1(b)(1)(B)(i). It also ruled that, for sentencing purposes, it would hold the appellant responsible for only the cash contained in the two bundles ($204,440), even though the conspiracy as a whole had laundered a much greater sum (approximately $1,839,208).

The court then proceeded to deny the appellant's request for a downward role-in-the-offense adjustment.  See USSG §3B1.2(b) (authorizing a two-level downward adjustment if the defendant played a minor role in the offense).  Making a series of other calculations, the court settled upon a total offense level of 25 and a criminal history category of III.  In this venue, the appellant does not challenge any of these rulings but, rather, accepts the district court's calculation of the guideline sentencing range (GSR): 70-87 months.

During the sentencing proceedings, defense counsel briefly mentioned that the appellant was a former heroin addict who, since committing the offense of conviction, had rehabilitated himself.  This information led to the following exchange:

> The Court: So what are you suggesting?
>
> Defense Counsel: I'm suggesting that the Court depart downward because this . . .
>
> The Court: Absolutely not.  On the basis of what?

To this question, defense counsel explicated, in some detail, that during the years intervening between the offense conduct and the arrest, the appellant had checked himself into a rehabilitation facility, moved to Florida, forsook his criminal ways, and obtained gainful employment.  Counsel argued that these developments suggested that a below-the-range sentence would be an appropriate outcome.  The district court disagreed, stating:

> I'm going to deny the role request that you're making. I am going to deny the departure request you're going to make, and I'm going to deny any other sentence than the advisory guideline proposed here.
> There is nothing on this record under 3553(a) that moves me, moves me to consider any other sentence than the sentence proposed as advisory by the guidelines for cases like this.

In the end, the court imposed a mid-range sentence of 78 months in prison. At the conclusion of the hearing, it asked whether either side had "[a]nything else?" The only rejoinder was from defense counsel, who requested that the sentence be served in "the Tampa area."

In this appeal, the appellant argues that the sentencing court committed reversible error by (i) presuming the reasonableness of the GSR; (ii) neglecting sufficiently to explain the sentence imposed; and (iii) failing to consider mitigating factors favoring a below-the-range sentence. We approach these claims of error mindful that, in the wake of the Supreme Court's landmark decision in United States v. Booker, 543 U.S. 220, 245 (2005), we have encouraged the district courts to follow a specifically delineated roadmap when sentencing under the now-advisory federal sentencing guidelines:

> [A] sentencing court ordinarily should begin by calculating the applicable guideline sentencing range; then determine whether or not any departures are in order; then mull the factors delineated in 18 U.S.C. § 3553(a) as well as any other relevant considerations; and, finally, determine what sentence, whether

-5-

> within, above, or below the guideline
> sentencing range, appears appropriate.

United States v. Pelletier, 469 F.3d 194, 203 (1st Cir. 2006) (citing United States v. Jiménez-Beltre, 440 F.3d 514, 518-19 (1st Cir. 2006) (en banc)).

The court below did not follow this roadmap. That omission complicates appellate review, but in this instance it does not frustrate that review. After all, we have treated this roadmap as helpful, but not obligatory. Thus, a sentencing court may leave the roadmap to one side and proceed in some other sequence as long as the findings are made and all the requisite factors are addressed. See, e.g., United States v. Pacheco, 489 F.3d 40, 44 (1st Cir. 2007) (explaining that district court may combine steps or vary the order). This is such a case.

In reviewing a sentence, we seek to ensure that it is both procedurally sound and substantively reasonable. United States v. Martin, 520 F.3d 87, 92 (1st Cir. 2008). Here, substantive reasonableness is not in issue; the appellant assigns only procedural error. That taxonomy includes "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the 18 U.S.C. § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." United States v. Stone, 575 F.3d 83, 89 (1st Cir. 2009)

(quoting United States v. Innarelli, 524 F.3d 286, 292 (1st Cir. 2008)).

The appellant's claims of error, like all claims of procedural unreasonableness in sentencing, are reviewed, generally, for abuse of discretion. United States v. Carrasco-De-Jesús, 589 F.3d 22, 26-27 (1st Cir. 2009); Martin, 520 F.3d at 92. Yet, when a defendant fails to preserve an objection below, the plain error standard supplants the customary standard of review. See, e.g., United States v. Almenas, 553 F.3d 27, 36 (1st Cir. 2009); United States v. Manqual-Garcia, 505 F.3d 1, 15 (1st Cir. 2007).

In the case at hand, the appellant did not interpose an objection as to any of the procedures that he now seeks to challenge. This default is particularly glaring in view of the district court's specific inquiry at the conclusion of the disposition hearing. Consequently, plain error review obtains. "Review for plain error entails four showings: (1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001).

Against this backdrop we proceed to address the appellant's claims of error one by one.

The first issue deals with the weight that the district court attached to the GSR. The touchstone for our analysis is the decision in Gall v. United States, 552 U.S. 38 (2007). There, the Supreme Court admonished that even though the federal sentencing guidelines "should be the starting point and the initial benchmark" for constructing a sentence, the sentencing court "may not presume that the Guidelines range is reasonable." Id. at 49-50.

Citing the Court's follow-on decision in Nelson v. United States, 129 S. Ct. 890 (2009) (per curiam), the appellant labors to convince us that the court below transgressed this tenet. In particular, he assails the court's statement that it was "going to deny any other sentence than the advisory guideline proposed" and its summary rejection of his entreaty to depart downward. In the appellant's view, these actions demonstrate the sentencing court's embrace of the very presumption of reasonableness that Gall forbids.

We find this argument unpersuasive. To begin, Nelson does not assist the appellant's cause. There, the district court unequivocally declared at sentencing that "the Guidelines are considered presumptively reasonable." Id. at 891. That was a patent violation of the tenet articulated in Gall.

The case at bar is at a considerable remove. Here, the sentencing court made no such declaration. Although it declined to accept the appellant's proposal for a non-guideline sentence (24

-8-

months), it made that ruling only <u>after</u> hearing lengthy arguments as to whether and why the GSR should hold sway. The court concluded that there was "nothing on th[e] record" that prompted it "to consider any other sentence than the sentence proposed as advisory by the guidelines."

There is a world of difference between according a presumption of reasonableness to the GSR — a practice that <u>Gall</u> forbids — and finding that the GSR, <u>in</u> <u>a</u> <u>particular</u> <u>case</u>, represents an appropriate sentencing range. This is a case of the latter stripe.

Read as a whole, the sentencing transcript makes manifest not only the court's awareness that the GSR was merely an initial benchmark, but also its conclusion that the circumstances of the case made it appropriate to hew to that benchmark in fashioning the appellant's sentence. That was not error. <u>See</u>, <u>e.g.</u>, <u>United States</u> v. <u>Smith</u>, 531 F.3d 109, 112 (1st Cir. 2008) (finding no presumption of reasonableness where the district court "did not feel bound to impose a sentence within the GSR").

The appellant's next contention is that the district court failed adequately to explain its rationale for the sentence it imposed. In this regard, the appellant invokes a statute providing that, in a federal criminal case, a sentencing court must "state in open court the reasons for its imposition of the particular sentence." 18 U.S.C. § 3553(c).

We have recognized, however, that this directive must be read in a practical, common-sense way. The statutory directive "does not mean that the sentencing court's explanation need be precise to the point of pedantry." United States v. Turbides-Leonardo, 468 F.3d 34, 40 (1st Cir. 2006). In all events, "with respect to a sentencing court's duty of explanation, brevity is not to be confused with inattention." Id. at 41-42. This is especially true where, as here, a court prescribes a sentence that falls within the GSR. See id. at 41; see also Rita v. United States, 551 U.S. 338, 356-57 (2007) ("[W]hen a judge decides simply to apply the Guidelines to a particular case, doing so will not necessarily require lengthy explanation."). Where, as here, the GSR has been correctly calculated and spans less than 24 months from bottom to top, a district court "arguably is not required to cite any reasons for imposing a within-the-range sentence." Turbides-Leonardo, 468 F.3d at 41 (emphasis in original).

These principles are dispositive here. Although it is true that the district court did not explicitly address each of the appellant's arguments for a below-the-range sentence, the court was not required to offer that level of elucidation. See id. at 40-41. A sentencing court's process of ratiocination "can often be inferred by comparing what was argued by the parties or contained in the pre-sentence report with what the judge did." Jiménez-Beltre, 440 F.3d at 519; see also Rita, 551 U.S. at 358 (holding

-10-

that where the sentencing court imposed a within-the-range sentence and the record indicates that the court heard the defendant's arguments and considered the supporting evidence, it may be inferred that "[t]he judge simply found the[] circumstances insufficient to warrant a sentence lower than the Guidelines range").

So it is here: we may infer from the protracted arguments and colloquy preceding the imposition of sentence that the court below considered all the arguments and evidence before settling upon an appropriate sentence. The court's clear pronouncement that there was nothing in the record that warranted unusually favorable treatment bolsters this inference.

As a subset of this argument, the appellant suggests that 18 U.S.C. § 3553(c)(1) required more specificity. That suggestion, however, is grounded in a misreading of the statute.[1] This provision applies only when the span of the GSR, measured from the low end to the high end, is greater than 24 months. See United States v. Arango, 508 F.3d 34, 44 (1st Cir. 2007); United States v. Cirilo-Muñoz, 504 F.3d 106, 131 (1st Cir. 2007) (per curiam). Here, the sentencing range begins at 70 months and tops off at 87 months. Simple arithmetic demonstrates that the spread between the

---

[1] 18 U.S.C. § 3553(c) provides in pertinent part that if the GSR "exceeds 24 months," the court "shall state in open court . . . the reason for imposing a sentence at a particular point within the range."

low and high ends is too modest to trigger the statutory requirement.

The appellant's final claim of error is that the district court failed to consider mitigating factors favoring a below-the-range sentence.[2]  Specifically, he complains that he was less culpable than his confederates, and that he undertook rehabilitative efforts of his own volition.  These plaints lack force.

Merely raising potentially mitigating factors does not guarantee a lesser sentence.  "A criminal defendant is entitled to a weighing of the section 3553(a) factors that are relevant to [his] case, not to a particular result." Carrasco-De-Jesús, 589 F.3d at 29.

Here, the sentencing court heard about a myriad of circumstances, including the appellant's relative culpability and efforts at rehabilitation.  The court determined that those circumstances did not warrant the degree of leniency that the appellant sought.  Although the court did not specifically reference the factors that the appellant now highlights, the sentencing transcript, read as a whole, evinces a sufficient weighing of the section 3553(a) factors.  See United States v.

---

[2] The government urges us to deem this claim of error waived by reason of the cursory treatment given to it in the appellant's brief.  See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).  Because the claim is easily dispatched on the merits, we bypass the waiver question.

Quiñones-Medina, 553 F.3d 19, 26-27 (1st Cir. 2009); see also Turbides-Leonardo, 468 F.3d at 41-42.  And the fact that the court stated that it had considered all the section 3553(a) factors is entitled to some weight.  See United States v. Morales-Machuca, 546 F.3d 13, 26 (1st Cir. 2008).

Pointing to one of his codefendants, the appellant makes a related claim of sentencing disparity.[3]  That claim is hopeless.

A district court's consideration of sentencing disparity "aims primarily at the minimization of disparities among defendants nationally."  Martin, 520 F.3d at 94; see also United States v. Rodríguez-Lozada, 558 F.3d 29, 45 (1st Cir. 2009).  While avoidance of disparities among codefendants may be considered, a party "is not entitled to a lighter sentence merely because his co-defendants received lighter sentences."  United States v. Wallace, 573 F.3d 82, 97 (1st Cir. 2009) (quoting United States v. Marceau, 554 F.3d 24, 33 (1st Cir. 2009)).

The sockdolager is that the record contains no evidence that the appellant and any codefendant were fair congeners.  Among other things, the codefendant pleaded guilty in accordance with a negotiated plea agreement and, therefore, was not in that respect situated similarly to the appellant.  See Rodríguez-Lozada, 558 F.3d at 45.

---

[3] Codefendant Oneil Concepción-Zapata was sentenced on June 16, 2008, pursuant to a negotiated plea agreement, to 46 months in prison.

-13-

We need go no further.  For the reasons elucidated above, we conclude that the sentencing in this case was free from error, plain or otherwise.

**<u>Affirmed</u>**.