Not for Publication in West's Federal Reporter

# United States Court of Appeals
## For the First Circuit

No. 14-1985

UNITED STATES OF AMERICA,

Appellee,

v.

MUSTAFA AL KABOUNI,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. Mary M. Lisi, U.S. District Judge]

Before

Thompson, Lipez, and Kayatta,
Circuit Judges.

B. Alan Seidler on brief for appellant.
Peter F. Neronha, United States Attorney, and Donald C. Lockhart, Assistant United States Attorney, on brief for appellee.

April 25, 2016

**LIPEZ**, **Circuit Judge**.  Appellant Mustafa Al Kabouni pled guilty to 18 counts in connection with a conspiracy to defraud the Supplemental Nutrition Assistance Program (SNAP) by accepting SNAP benefits in exchange for cash.  He admitted to conspiracy to unlawfully acquire SNAP benefits, wire fraud, and money laundering.  The district court determined that his total offense level was 25, including a four-level upward adjustment for "organiz[ing] or lead[ing]" the fraud.  U.S.S.G. § 3B1.1(a). Factoring in appellant's criminal history category of I, his Guidelines range was 57 to 71 months' imprisonment.  He was sentenced to a below-Guidelines sentence of 36 months.  On appeal, he argues that the district court erroneously increased his offense level under § 3B1.1(a).  Appellant also argues that he received ineffective assistance of counsel at sentencing.

We find no clear error in the district court's conclusion that appellant was a leader or organizer for purposes of the four-level upward adjustment.  We also decline to consider appellant's ineffective assistance of counsel claim in this direct appeal. Accordingly, we affirm.

## I.  BACKGROUND[1]

Appellant owned one store (Regency Mart), and was at least part owner of a second store (Corner Store), in the Providence, Rhode Island area.  Both stores were authorized by the federal government to accept SNAP credits -- a form of federal benefits commonly known as "food stamps" -- from individual recipients in exchange for approved food items.  Clerks at both stores participated in a scheme to defraud the SNAP program along the following lines.  Ordinarily, SNAP beneficiaries use electronic benefit transfer (EBT) cards to purchase goods from a retailer.  The retailer then represents to the government that it obtained those credits by selling approved items, and the government deposits cash -- equivalent to the face value of the credits -- into the retailer's account.  At Regency Mart and Corner Store, however, clerks fabricated sales to justify accepting SNAP benefits.  Customers with SNAP EBT cards paid a certain amount of credits to the store, and the clerks gave them cash -- roughly half the cash value of the credits.  The stores then represented to the government that they had accumulated the SNAP credits in legitimate transactions, and received cash from the government in

_____

[1] Because appellant pled guilty, the relevant facts are taken from the unchallenged portions of the Presentence Investigation Report ("PSR"), and the change of plea and sentencing hearings. See United States v. Dávila-González, 595 F.3d 42, 45 (1st Cir. 2010).

- 3 -

exchange for those credits.  In the end, the stores received about half of the proceeds of the scheme, the other half going to the SNAP beneficiaries themselves.  Appellant admits to overseeing operation of the scheme at Regency Mart, though he claims his role was more limited at Corner Store.

## II. DISCUSSION

### A.  The Offense Level Adjustment

Appellant claims that the record does not support the district court's conclusion that he was "an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive," § 3B1.1(a), and that therefore the four-level adjustment was applied in error.

We review the district court's factfinding for clear error.  See United States v. Delgado, 288 F.3d 49, 52 (1st Cir. 2002).  We also review role-in-the-offense determinations, which are innately fact-specific, for clear error.  See United States v. Colón-Muñoz, 318 F.3d 348, 364 (1st Cir. 2003).

The district court made two necessary findings before applying § 3B1.1(a):  that appellant was an "organizer or leader," and that the criminal activity was sufficiently extensive.[2]  Those

---

[2] Criminal activity is sufficiently extensive under § 3B1.1(a) if it either involved five or more participants, or was otherwise extensive.  See United States v. Dietz, 950 F.2d 50, 53 (1st Cir. 1991).  Here, the district court found the conspiracy to be otherwise extensive.

- 4 -

findings had to be supported by a preponderance of the evidence. See Delgado, 288 F.3d at 52. In making those findings, the court was permitted to rely on undisputed facts from the PSR. See United States v. Prochner, 417 F.3d 54, 65-66 (1st Cir. 2005). We see no clear error in either finding.

The district court based its conclusion that appellant was a leader or organizer on his direction of the scheme at Regency Mart, and his control over the finances of both stores. The undisputed facts adequately support this finding. Appellant admitted that he was the sole owner of Regency Mart, authorized his employees to conduct fraudulent transactions there, and claimed substantially all of the $293,000 in illicit proceeds from that location. See United States v. Aguasvivas-Castillo, 668 F.3d 7, 15 (1st Cir. 2012) (identifying factors to be considered in determining the role-in-the-offense to include "authority exercised over others," and "the claimed right to a larger share of the fruits of the crime" (quoting U.S.S.G. § 3B1.1 cmt. n.4)). With regard to Corner Store, appellant did not dispute the PSR's statement that SNAP credits flowed from both stores into bank accounts he controlled, including all proceeds of the illicit transactions at Corner Store. Further, the money laundering counts to which he pled guilty were based on transactions he personally conducted using Corner Store's SNAP account. See id. (emphasizing the significance of defendant's control over the bank accounts of

stores engaged in SNAP fraud, and concluding that he exercised a leadership role in the fraud); see also U.S.S.G. § 3B1.1 cmt. n.2 (authorizing a role-in-the-offense adjustment for defendants who "exercise[] management responsibility over the property[] [or] assets . . . of a criminal organization").

Additionally, it is undisputed that the criminal activity here involved store employees and numerous SNAP beneficiaries, and the illicit transfer of over $1.9 million in SNAP credits over roughly three years. The district court's finding that this activity was sufficiently extensive under § 3B1.1(a) was not clear error. See Dietz, 950 F.2d at 53-54 (finding criminal activity otherwise extensive under § 3B1.1(a) based on the "number of participants" -- including minor participants -- and the "width, breadth, scope, complexity, and duration" of the scheme); U.S.S.G. § 3B1.1 cmt. n.3 ("In assessing whether an organization is 'otherwise extensive,' all persons involved during the course of the entire offense are to be considered.").

**B.    The Ineffective Assistance of Counsel Claim**

Appellant also claims that his attorney's failure to properly challenge the application of § 3B1.1(a) amounted to ineffective assistance of counsel.[3]    Claims of ineffective

---

[3] Counsel's purported failures are, first, not moving for an evidentiary hearing on appellant's role in the offense, and second,

assistance of counsel generally may not be raised for the first time on direct appeal. United States v. Jones, 778 F.3d 375, 389 (1st Cir. 2015); United States v. Grace, 367 F.3d 29, 37 (1st Cir. 2004) (applying the rule to a claim of ineffective assistance at sentencing). This is because appellate courts typically lack a sufficient record to make the necessary fact-specific determinations as to what happened, and why counsel took the challenged actions. United States v. LaPlante, 714 F.3d 641, 648 (1st Cir. 2013). An exception to the general rule allows ineffective assistance claims to be considered on direct appeal in "those rare instances in which the record is sufficiently developed." Jones, 778 F.3d at 389-90.

Appellant offers no plausible argument that the general rule should not apply.[4] We note, in particular, the lack of record evidence on "why counsel acted as he did," LaPlante, 714 F.3d at 648, and decline to consider the ineffective assistance claim. We dismiss this claim of error without prejudice to the defendant's right to seek relief pursuant to 28 U.S.C. § 2255.

---

not arguing in the alternative that the court should enhance his offense level by two levels under U.S.S.G. § 3B1.1(c) or three levels under U.S.S.G. § 3B1.1(b), rather than four levels under § 3B1.1(a).

[4] Indeed, appellant's brief fails to even acknowledge the general rule as it exists in this circuit. In an apparent oversight, the brief cites only Second Circuit cases on this issue.

## III. CONCLUSION

Finding no merit in appellant's arguments, we affirm the judgment below.

So ordered.